1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                       **FOR THE DISTRICT OF ARIZONA**

8

9    Alta Kinsel,                              No. CV-20-08296-PCT-DJH

10                   Plaintiff,                 **ORDER**

11   v.

12   BMW of North America LLC, et al.,

13                   Defendants.

14

15          This matter is before the Court on Plaintiff Alta Kinsel ("Plaintiff") and Defendant

16   BMW of North America LLC's ("BMW NA") (collectively "the Parties") responses to two

17   prior Orders from the Court.  First, at the June 16, 2023, Final Pretrial Conference

18   (Doc. 176) (the "FPTC"), the Court ordered the Parties to produce supplemental

19   information regarding Plaintiff's past medical bills that were at issue in BMW NA's

20   Motion in Limine No. 3 (Doc. 143).  (Doc. 176).  Second, in its August 1, 2023, Amended

21   Order (Doc. 181), the Court directed the Parties to submit additional briefing on their jury

22   instruction dispute on whether Plaintiff's negligence claim should be subsumed by her

23   strict liability claim.  The Court has reviewed the Parties' responses (Docs. 180; 182;

24   183; 185) and will discuss each issue in turn.

25   **I.    Background**

26          This case arises from a motor vehicle accident where Plaintiff collided with an 18-

27   wheel tractor trailer while driving a 2003 BMW X5 (the "Accident").  (Doc. 1-1 at ¶¶ 14–

28   15).  Plaintiff alleges her seatbelt restraint system failed during the Accident, which caused

1   her to sustain serious injuries that resulted in paralysis.  (*Id*. at ¶¶ 16–18).  As discussed at
2   the FPTC, Plaintiff has narrowed her claims to strict liability (*id*. at ¶¶ 32–54) and
3   negligence (*id*. at ¶¶ 69–81).

## II.     Admissibility of Plaintiff's Medical Records and Bills at Trial

5          The Court previously granted in part and denied in part BMW NA's Motion in
6   Limine No. 3 to preclude Plaintiff from referencing her past medical bills to establish
7   damages stemming from the Accident.  (Doc. 174 at 7–8).  In doing so, the Court
8   (1) permitted Plaintiff to introduce medical bills in the full amount even though her insurer
9   may have negotiated a lesser payment on her behalf; and (2) granted BMW's request that
10  Plaintiff redact from her medical bills any references to insurers.  (*Id*. at 8).  The Court,
11  however, withheld its ruling on BMW NA's request to preclude any references to
12  Plaintiff's past medical bills due to Plaintiff's failure to disclose evidence that the bills
13  reflect reasonable expenses.  (*Id*. at 7).  At the FPTC, the Court required the Parties to
14  "meet and confer to (a) confirm what documents relating to Plaintiff's medical bills were
15  exchanged during discovery; and (b) identify the witnesses that will be testifying on the
16  matter."  (Doc. 176).  The parties subsequently filed a July 27, 2023, "Joint Response"
17  (Doc. 180) with the requested information.

### A.     Legal Standards for Admitting Medical Records in Personal Injury Cases

20         The Court will first clarify the standards for admitting a plaintiff's medical records
21  into evidence before turning to the Parties' specific arguments.  Arizona Rule of Evidence
22  803(6) provides that certain business records are admissible notwithstanding the hearsay
23  rule so long as they possess the appropriate foundation.  Ariz. R. Evid. 803(6).  To be
24  relevant, medical records must be linked to the issues in the case.  *Larsen v. Decker*, 995
25  P.2d 281, 285 (Ariz. Ct. App. 2000).  In a personal injury case, such as here, the plaintiff
26  must "establish a connection between the auto accident and the need for treatment from
27  the[] doctors for injuries caused by the auto accident."  *Id*. at 286.  The trial court maintains
28  discretion to decide whether the plaintiff has met this burden.  *Id*.

If the medical records and bills themselves do not equivocally establish the requisite causal connection, other evidence demonstrating that the expenses were necessary and reasonable may be needed for the jury to determine how much damage to allocate to an auto accident. *Id.* at 285–87 (holding the trial court did not abuse its discretion when excluding plaintiff's medical bills because the plaintiff did not lay the proper foundation to establish the bills were caused by and were reasonable and necessary results of the auto accident); *see also Fadely v. Encompass Health Valley of Sun Rehab. Hosp.*, 515 P.3d 701, 709 (Ariz. Ct. App. 2022), *review denied* (Dec. 6, 2022) ("Plaintiff needed to establish (1) a causal connection between the medical bills and [the defendant's] negligent conduct, (2) the treatment was necessary, and (3) the expenses were reasonable." (citing *Larsen*, 995 P.2d at 285–86)).  Testimony from medical experts or treating physicians regarding a plaintiff's medical bills is not always required to establish this additional evidence, as a plaintiff may also testify to whether an accident caused her injuries and whether her treatments were reasonable and necessary.  *See Pino-Alvarez v. Erlichman*, 2020 WL 584061, at *2 (Ariz. Ct. App. Feb. 6, 2020) (citing *Larsen*, 995 P.2d at 287).

**B.      Plaintiff's Disclosed Witnesses Must Lay the Proper Foundation**

The Parties appear to agree on the documents that were exchanged during the discovery process regarding Plaintiff's medical costs.  (Doc. 180 at 4–6; *see also* Docs. 180-1; 180-2; 180-3; 180-4).  BMW NA characterizes Plaintiff's purported bills as "ledger sheets listing services with a stated charge that does not correspond to any bill sent to [Plaintiff] or a government or third-party payor."  (Doc. 180 at 2–3).  BMW NA contends that these sheets "do not reflect the amounts the provider expected to receive in payment for [Plaintiff]'s care; they are not the amounts the provider did receive for [Plaintiff]'s care; they do not state the amount that the provider would accept as payment in full for her care; and they do not represent the reasonable charge that any provider would charge for the care."  (Doc. 180 at 2–3).  The Court agrees that Plaintiff's medical records and bills themselves do not equivocally establish the requisite causal connection between the medical costs represented in these exhibits and Plaintiff's accident-related injuries.  Thus,

1  other evidence showing that the expenses were necessary and reasonable is required.  *See*
2  *Larsen*, 995 P.2d at 285–87.

3        The Parties generally agree that Plaintiff's healthcare providers may testify to
4  whether her medical treatments were connected to the Accident and therefore necessary.
5  (*See id.* at 2, 4).  However, BMW NA argues that Plaintiff has not disclosed a witness to
6  testify about the reasonableness of her medical charges and Plaintiff lacks the documentary
7  evidence necessary to demonstrate she was actually billed the amounts she claims were
8  charged.  (Doc. 180 at 3).  Plaintiff contends the following disclosed witnesses are capable
9  of laying the requisite foundation for her medical expenses: (1) relevant Custodians of
10  Records; (2) Plaintiff's healthcare providers; and (3) Plaintiff's expert life care planner,
11  Lora White ("Ms. White").  (Doc. 180 3–4, 7–8).  The Court will consider each witness in
12  turn.

13                    **1.        Custodians of Records**

14        First, BMW NA argues Plaintiff did not disclose that any Custodians of Records
15  would testify as to reasonableness of medical bills, and cannot establish that the Custodians
16  of Records are qualified to do so.   (Doc. 180 at 2).  But Custodians of Records are
17  inherently fit to authenticate Plaintiff's medical costs in bills and records as administrative
18  handlers.  *See* Fed. R. Evid. 901.  Although BMW NA challenges Plaintiff's ability to
19  prove the amounts that were actually charged to her, the Court finds that Custodians of
20  Records—and Plaintiff herself—can testify to these issues at trial if they have personal
21  knowledge.  *Id.*  More uncertain, however, is whether Custodians of Records possess
22  personal knowledge regarding the reasonableness of various medical treatment expenses.
23  *See e.g.*, *Fadely*, 515 P.3d at 709 ("[When] [a]sked whether [the hospital's] treatment was
24  medically necessary and reasonable, the office manager generally answered that [the
25  hospital] would only bill [] for medically necessary treatment at reasonable expenses.").
26  The Court will make its ruling on any such testimony at the appropriate time during the
27  course of trial.
28  / / /

## 2.      Plaintiff's Healthcare Providers

Second, Plaintiff represents her "health care providers are expected to testify to Plaintiff's injuries, physical examinations, diagnosis, clinical care and prognosis provided . . . . consistently with their medical records." (Doc. 180 at 4).  The Court finds Plaintiff's healthcare providers may be able to testify to the reasonableness of certain medical costs, but only if they can first lay the proper foundation for their knowledge of the treatment costs.  In that case, the healthcare providers may express their opinions as to whether Plaintiff's medical expenses are reasonable based on their prior experiences. *See* Fed. R. Evid. 703.  If the healthcare providers do not have personal knowledge of the amounts charged, however, it follows that they cannot possibly testify as to the reasonableness of the amounts.  In other words, so long as Plaintiff can lay the proper foundation regarding the treating physicians' knowledge of her treatment costs, the Court will permit the identified treating physicians to express their opinions and prior experiences as to reasonableness of Plaintiff's claimed medical expenses.

## 3.      Plaintiff's Expert Life Care Planner

Last, BMW NA contends Ms. White cannot testify to the reasonableness of Plaintiff's medical bills because Ms. White did not opine on that topic in her report or at her deposition,  Ms. White "was not disclosed as an expert on that topic, and [Ms. White] has not established she has the necessary factual information or a reliable basis for doing so." (Doc. 180 at 2).  However, similar to Plaintiff's healthcare providers, the Court finds that Ms. White, as Plaintiff's expert life care planner, may be able to testify to the reasonableness of certain medical costs if she can first lay the proper foundation for her personal knowledge of the specific costs.  *See supra* Section II.B(2); *see* Fed. R. Evid. 703.  Ms. White's opinions in this respect are within the scope of her physician relationship with Plaintiff when developing Plaintiff's life care plan.  The Court further agrees with Plaintiff that BMW NA cannot claim prejudice regarding the amounts contained in Plaintiff's medical records and bills because those documents were properly disclosed. (Doc. 180 at 4).

So long as Plaintiff can lay the proper foundation regarding Ms. White's knowledge of the costs for treatments, the Court will permit Ms. White to express her opinions and prior experiences as to reasonableness of Plaintiff's claimed medical expenses.  Ms. White, however, is prohibited from testifying to any other matters that are not included in her expert report or deposition because it would prejudice BMW NA.

### C.    Conclusion Regarding Plaintiff's Medical Records and Bills

In sum, Plaintiff is on notice that she must lay the proper foundation before her medical records and bills are admitted into evidence.  She must establish the following through a disclosed witness: (1) a causal connection between her medical bills and the subject Accident, (2) that the treatment was necessary, and (3) that the expenses were reasonable.  *Fadely*, 515 P.3d at 709 (citing *Larsen*, 995 P.2d at 285–86)).  The Court will make its ruling on the sufficiency of the foundation laid for Plaintiff's medical bills at the appropriate time during the course trial.  *See Goodman v. Las Vegas Metro. Police Dep't*, 963 F.Supp.2d 1036 (D. Nev. 2013), *aff'd in part, rev'd in part, and dismissed in part on other grounds*, 613 F. App'x 610 (9th Cir. 2015) (holding that rulings on motions in limine "'are not binding on the trial judge [who] may always change his [or her] mind during the course of a trial.'" (quoting *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000)).

## II.    Jury Instructions on Plaintiff's Negligence and Strict Liability Claim

The Court now turns to the Parties' briefs on their jury instruction dispute.  (Docs.182; 183; 185).  BMW NA filed a "Trial Brief in Opposition to Plaintiff's Proposed Jury Instructions Regarding Negligence" (Doc. 182), Plaintiff filed a Response (Doc. 183), and BMW NA Filed a Reply (Doc. 185).  BMW NA argues Plaintiff's negligence claim is subsumed by her strict liability claim because they are factually identical.  (Doc. 182 at 4–5).  BMW NA thus requests the Court to reject Plaintiff's proposed negligence instructions "because their inclusion would be confusing to the jury and potentially lead to an inconsistent verdict."  (Doc. 182 at 5).  On the other hand, Plaintiff requests the Court to allow both of her strict liability and negligence claims to proceed with separate jury instructions and on Plaintiff's Proposed Special Verdict Form (Doc. 120 at 44–46).

1    The Court will first clarify the underlying allegations of Plaintiff's claims as well as

2    the Parties' agreed upon jury instructions before turning to the merits of BMW NA's

3    request.

4        **A.    Background**

5        The Parties largely disagree on what legal theories Plaintiff's negligence and strict

6    liability claims are predicated.[1]  To address these discrepancies, the Court returns to the

7    allegations in the operative Complaint (Doc. 1-1 at 14–30).[2]

8        Plaintiff's strict liability claim, as alleged in her Complaint, encompasses multiple

9    theories of liability.  She alleges, in relevant part, that:

10       33.    Defendant BMW is strictly liable for designing, testing,
         manufacturing, assembling, installing, selling, and/or placing a defective
11       and unreasonably dangerous product into the stream of commerce.

12
         . . . .
13

14       37.    At all times relevant hereto, the BMW X5 and its component parts
         were defective as to design, manufacture, and warnings, causing the BMW
15       X5 and its component parts . . . to be in a defective condition that made them
         unsafe for their intended use.
16

17       . . . .

18       44.    Specifically, the BMW X5 was defective and unreasonably
         dangerous because it experienced a catastrophic failure of its passenger
19       restraint system, including the seatback, which injured Plaintiff and resulted

20

21    _____

22    [1]  Regarding Plaintiff's strict liability claim, BMW NA's position is that Plaintiff has
      alleged a design defect theory (Doc. 182 at 4).  Plaintiff seems unsure altogether.  For
23    example, Plaintiff's Counsel stated at the FPTC that "as far as strict liability goes, the
      failure to warn, that is under strict liability."  (Doc. 186 at 5).  But, in Plaintiff's response
24    brief to the August 1, 2023, Amended Order, Plaintiff states that "[t]he basis of the strict
      liability claim focuses solely quality and safety of the product—the seatback of the BMW
25    X5." (Doc. 183 at 4).

26    Regarding Plaintiff's negligence claim, BMW NA's position is that Plaintiff has alleged a
      design defect theory.  (Doc. 182 at 2).  By contrast, Plaintiff maintains her negligence claim
27    is based on a failure to warn theory.  (Doc. 183 at 2 (citing Doc. 1-1 at 26)).

28    [2]  The Court notes that despite BMW NA's arguments to narrow Plaintiff's theories of
      liability, BMW NA has not filed any motion to dismiss, and neither Party has filed a
      dispositive motion in this matter.

in her paralysis.

45.     It was highly foreseeable to Defendant BMW that this type of collision could break an inadequate seatback and passenger restraint system and cause severe and significant injuries to the driver.

46.     The BMW X5 lacked adequate and sufficient warnings and instructions about the risks, dangers, and harms presented by the BMW X5 and reasonable means to reduce such risks, dangers, and harms.

47.     The BMW X5's design failed to incorporate other safer designs and technologies which could protect occupants from foreseeable injuries in incidents such as the incident that injured the Plaintiff.

(*Id.* at 20, 22).

Plaintiff set forth the following allegations, relevant in part, to support her negligence claim, which, again, encompass multiple theories of liability:

73.     Defendant[] BMW . . . breached its duties and the standard of care in designing, manufacturing, distributing, and selling a product that was not reasonably safe and failing to warn its consumers and dealers of its dangers.

74.     Defendant[] BMW . . . failed to select, hire, employ, supply, and contract with competent designers, manufacturers, suppliers, and distributers of component parts for its 2003 BMW X5 passenger restraint system, including the seatback.

75.     At the time of the design and manufacture of the BMW X5, BMW . . . w[as] aware or should have been aware of the dangers of a vehicle that experiences a catastrophic failure of its passenger restraint system, including the seatback.

76.     Defendant[] BMW . . . w[as] further aware or should have been aware of design characteristics necessary to assure that such failures would not occur and to assure reasonable safety and protection to occupants.

77.     Defendant[] BMW . . . nonetheless failed to adequately design the BMW X5 and tis [sic] passenger restraint system, including the seatback, to prevent such failures.

78.     At the time of the design and manufacturer of the BMW X5, Defendant[] BMW . . . w[as] aware or should have been aware of alternative designs that were technologically and economically feasible and that would

- 8 -

have constituted more effective protection for occupants against injuries of the type suffered by Plaintiff.

79.    Nonetheless, Defendant[] BMW . . . failed to incorporate other designs and technologies which could protect occupants form foreseeable incidents such as the incident that injured Plaintiff.

(*Id*. at 26–27).

In an apparent effort to account for Plaintiff's multiple theories of liabilities, the parties stipulated in their Proposed Jury Instructions (Doc. 120) to two definitions of "Defect and Unreasonable Danger": (1) where the product contains a design defect (*id*. at 6); and (2) where the product does not contain adequate warnings (*id*. at 14).

### B.    The Parties' Arguments

BMW NA argues that Plaintiff's negligence claim is redundant because, like Plaintiff's strict liability design defect claim, it is based on a design defect theory. (Doc. 182 at 3 citing *Golonka v. Gen. Motors Corp* 65 P.3d 956, 962 (Ariz. Ct. App. 2003)).[3]  BMW NA thus argues the Court should not deliver jury instructions on Plaintiff's negligence claim[4] because if the jury finds that BMW NA is not at fault for strict liability design defect, it must necessarily find that BMW NA is not at fault for negligent design.

Plaintiff contends she has not brought a negligence claim based on a negligent design theory, noting that "BMW NA was never involved in the design of the seatback at issue [and] cannot be found liable for a negligent design." (Doc. 183 at 2).[5]  Plaintiff says

---

[3] BMW NA cites to *Golonka v. Gen. Motors Corp.* for the proposition that the elements for a negligent design claim include the same elements for a strict liability design defect claim, "plus . . . that the product designer knew or should have known that the product was defective and unreasonably dangerous." (Doc. 182 at 3 citing 65 P.3d at 962).

[4] Specifically, BMW NA takes issue the following instructions proposed by Plaintiff: (1) "Statement of Claim; Definition of Fault; Definition of Negligence (No Comparative Fault)" regarding BMW NA; (2) "Definition of Causation (No Comparative Fault)"; and (3) "Statement of Claims, Definition of Fault; Definition of Negligence (Comparative Fault)" regarding non-parties. (Doc. 120 at 17–20).

[5] This statement is somewhat contradictory to Plaintiff's Counsel's representation at the FPTC that "subject to the stipulation entered into by the parties, BMW is going to take responsibility for any manufacture design, and we allege that it was a poor design and that there were better designs available at the time." (Doc. 186 at 5; *see also* Doc. 177) (the January 19, 2023, Amended Order on the Parties' Stipulation).  Nonetheless, the Court

1   the negligence jury instructions are warranted because her negligence claim is predicated
2   on a failure to warn theory, which arises out of facts that are distinct from her strict liability
3   design defect claim.  (Doc. 183 at 2 citing Doc. 1-1 at 26).  In its Reply, BMW objects that
4   Plaintiff's case "has never been focused on any alleged failure to warn," and that Plaintiff
5   has not adequality pled the necessary elements to establish a failure to warn claim under
6   Arizona law.  (Doc. 185 at 2 (citing *D'Agnese v. Novartis Pharms. Corp*., 952 F. Supp. 2d
7   880, 890 (D. Ariz. 2013) ("Under Arizona products liability law, when a negligence claim
8   is based on a failure-to-warn theory, the plaintiff is required to prove that a manufacturer
9   or distributor did not warn of a particular risk for reasons which fell below the acceptable
10  standard of care, that is, what a reasonably prudent manufacturer would have known and
11  warned about.")).[6]

12      The Court will first address BMW NA's contentions regarding Plaintiff's purported
13  negligent failure to warn theory before turning to Plaintiff's negligent design defect theory.

14                    **1.      Negligent Failure to Warn**

15      Upon review of the Complaint, Plaintiff alleges in her negligence claim, however
16  briefly, that "Defendant[] BMW . . . breached its duties and the standard of care in
17  designing, manufacturing, distributing, and selling a product that was not reasonably safe
18  *and failing to warn its consumers and dealers of its dangers*."  (Doc. 1-1 at 26) (emphasis
19  added).  Plaintiff also included a section in her Proposed Special Verdict Form for her
20  negligence claim on a failure to warn theory.  (Doc. 120 at 45).

21      BMW NA essentially moves to dismiss Plaintiff's failure to warn theory under
22  Federal Rule of Civil Procedure 12(b)(6) standards.  (*See* Doc. 185 at 2–3).  BMW NA's
23  timing is sorely overdue, as the deadline for dispositive motions was nearly a year ago on
24  January 27, 2023.  (*See* Doc. 77).  BMW NA's has forfeited its chance to do so, and the

25  _____

26  will hold Plaintiff to its representation here and preclude negligence jury instruction that
    are based on a defective design theory.

27  [6] BMW NA argues Plaintiff has neither (a) "alleged that BMW NA failed to warn of a of
28  a particular risk"; (b) alleged "that a specific warning would have prevented or mitigated
    her injuries"; nor (c) "criticized any specific warning associated with the subject vehicle."
    (Doc. 185 at 2).

1    Court will certainly not entertain any such efforts through a reply brief to a jury instructions

2    dispute.  The Court also questions whether BMW NA is as quite in the dark as it purports

3    to be, given that it has, among other things, stipulated to the following jury instruction that

4    defines "Defect and Unreasonable Danger (Information Defect)":

> Plaintiff claims that there were not adequate warnings on/with the product. A
> product, even if faultlessly made, is defective and unreasonably dangerous if
> it would be unreasonably dangerous for use in a reasonably foreseeable
> manner without adequate warnings.
>
> A product is defective and unreasonably dangerous if a manufacturer who
> knows or should know, in light of the generally recognized and prevailing
> technical knowledge available at the time of the product's distribution, that a
> foreseeable use of the product may be unreasonably dangerous does not
> provide adequate warnings of the danger.
>
> In this case, you are to presume that Plaintiff would have heeded an adequate
> warning, if given.

(Doc. 120 at 14).  For these reasons, Plaintiff may submit a negligent failure to warn theory

at trial.

        Moreover, to the extent Plaintiff does submit evidence at trial to support her
negligent failure to warn theory, the Court agrees with Plaintiff that the jury may properly
distinguish this theory from Plaintiff's strict liability design defect claim.  *Golanka*
illustrates why.  65 P.3d at 961–965.  There, the plaintiff had brought a strict product
liability claim based on defective design and information defect theories, and a negligence
claim based on defective design and failure to warn theories.  *Id*. at 960.  The appellate
court defined the relationship between strict liability and negligent claims as follows:

> [W]hen a plaintiff's claims for strict liability design and negligent design are
> factually identical, and the jury employs a risk/benefit analysis to determine
> that the manufacturer is not at fault for strict liability design, the jury cannot
> consistently find the product manufacturer at fault for negligent design.
> Because that is the scenario in this case, the jury's negligence verdict was
> necessarily predicated on Plaintiffs' failure-to-warn theory.

*Golanka*, 65 P.3d at 965.  *Golanka* thus demonstrates that a jury can properly find a

1    defendant at fault for a strict liability design defect claim *and* a negligence claim when the

2    negligence claim is predicated on an alternative failure to warn theory.  The Court therefore

3    finds it is proper to submit jury instructions on both claims.

4                    **2.      Negligent Defective Design**

5           Plaintiff's most recent representation to the Court is that her negligence claim is

6    solely based on BMW NA's failure to warn, and she has not brought a negligence claim

7    based on a defective design.  (Doc. 183 at 2).  The Court will hold Plaintiff to her

8    representations and preclude any jury instructions on the negligent defective design theory.

9    Therefore, BMW NA's objection to including Plaintiff's proposed negligence instructions

10   on the basis that it is subsumed by her strict liability design defect claim is moot.

11          **C.      Conclusion Regarding Jury Instructions on Negligence**

12          To be clear, at trial, Plaintiff may base her negligence claim on a failure to warn

13   theory only.  Plaintiff shall not rely on a negligent design defect theory.  It follows that any

14   jury instructions regarding the negligent design defect theory are prohibited.  Furthermore,

15   the Court will allow Plaintiff's negligent failure to warn and strict liability design defect

16   claims to proceed with separate jury instructions.  Plaintiff's point is well taken that any

17   risk of jury confusion "can be sufficiently mitigated through clear and concise jury

18   instructions."  (Doc. 183 at 3).  So, the Court will require the parties to revisit their

19   proposed jury instructions and verdict forms to ensure they comply with the directives of

20   this Order.

21          Accordingly,

22          **IT IS ORDERED** that Plaintiff's disclosed witnesses may be able to testify to the

23   reasonableness of certain medical costs incurred by Plaintiff, but only if they can first lay

24   the proper foundation for their personal knowledge of the medical costs.  The Court will

25   make its ruling on the sufficiency of the foundation laid for Plaintiff's medical records and

26   bills at the appropriate time during the course of trial.

27          **IT IS FURTHER ORDERED** that, to the extent Plaintiff can lay the proper

28   foundation regarding Ms. Lora White's knowledge of Plaintiff's costs for medical

- 12 -

treatments as Plaintiff's expert life care planner, the Court will permit Ms. White to express her opinions and prior experiences as to reasonableness of Plaintiff's claimed medical expenses.  Ms. White, however, is prohibited from testifying to any other matters that are not included in her expert report or deposition because it would prejudice BMW NA.

**IT IS FURTHER ORDERED** that at trial, Plaintiff may base her negligence claim on a failure to warn theory only.  Plaintiff shall not rely on a negligent design defect theory. Consequently, BMW NA's request that the Court reject Plaintiff's proposed negligence instructions on the basis that it is subsumed by her strict liability design defect claim is **DENIED as moot**.  Plaintiff's request that the Court allow her strict liability design defect and negligent failure to warn claims to proceed with separate jury instructions is **GRANTED** as set forth above.

**IT IS FINALLY ORDERED** that, in light of the Court's denial of BMW NA's jury instruction request and granting of Plaintiff's jury instruction request, the Parties shall meet and confer on their proposed jury instructions and verdict forms (Doc. 120).  **By February 7, 2024,** the parties shall file revised versions of their jury instructions and verdict forms that comply with the directives of this Order.

Dated this 9th day of January, 2024.

Honorable Diane J. Humetewa
United States District Judge